**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ZAK SHAIK, | |
| **Plaintiff,** | |
| **v.** | **Civil No.** 24-252 (FAB) |
| MARK MELTON, *et al.,* | |
| **Defendants.** | |

**OPINION AND ORDER**

BESOSA, Senior District Judge.[1]

Before the Court is the Report and Recommendation ("R&R") issued by U.S. Magistrate Judge Gerald L. Jackson (Docket No. 170) regarding defendants' renewed motions to dismiss (Docket Nos. 134, 135, 136, 137, 138, 139, 141, 142). The R&R also addresses plaintiff Zak Shaik ("plaintiff")'s motion for leave to file the first amended complaint (Docket No. 143), motion for judicial notice of invalid lien and related fraud (Docket No. 145), motion for expedited discovery (Docket No. 151), and motion for sanctions (Docket No. 152). This case is before the Court by designation pursuant to 28 U.S.C. § 292(d). See Docket No. 146.

For the reasons set forth below, the Court **ADOPTS IN PART** and **REJECTS IN PART** the R&R. Defendant Ben Flowers's motion to dismiss

---

[1] Senior United States District Judge for the District of Puerto Rico, sitting by designation.

Civil No. 24-252 (FAB)                                                  2

is **DENIED IN PART.**   (Docket No. 137.)   Defendants' motions to dismiss with respect to each defendant except Flowers are **GRANTED.** (Docket Nos. 134, 135, 136, 138, 139, 141, 142).   Plaintiff's motion for leave to amend the complaint is **DENIED.**   (Docket No. 143.)   Plaintiff's motion for judicial notice of invalid lien is **MOOT.**   (Docket No. 145.)   Plaintiff's motion for expedited discovery is **DENIED.**   (Docket No. 151.)   Plaintiff's motion for sanctions is **DENIED.**   (Docket No. 152.)

## I.   Background

Plaintiff brought this suit against (1) Mark Melton, an Oklahoma state court judge of the Murray County District Court, (2) Wallace Coppedge, district judge of the Murray County District Court, (3) James English, assistant district attorney in Murray County, (4) Rebecca Johnson, an Oklahoma attorney, (5) Darin Rogers, Murray County sheriff, (6) Don Helpingstine, Murray County deputy sheriff, (7) Ben Flowers, an employee in the Murray County sheriff's office, (8) Kent McKinley, Murray County commissioner, (9) Colt Williams, Murray County commissioner, (10) Darrell Hudson, Murray County commissioner, (11) the Association of County Commissioners of Oklahoma ("ACCO"), and (12) Kara Christy, a claims adjuster for ACCO.   See Docket No. 1, pp. 2-3; Docket No. 170 at p. 2.   The case arises from proceedings in Murray County District Court over a limited liability company of which plaintiff was the

Civil No. 24-252 (FAB)                                                    3

sole member.    Plaintiff alleges that, during court proceedings, opposing counsel Rebecca Johnson used disrespectful language against him.    (Docket No. 1 at p. 4.)    When he tried to object, Judge Melton was not receptive.    Id.    Plaintiff then "calmly" expressed his intent to file an ethical complaint against Judge Melton, which caused Judge Melton to hold him in contempt of court. Id.    Plaintiff was arrested by defendant Don Helpingstine while District Attorney James English remained silent.    Id. at pp. 4-5. While being booked at the Murray County jail, plaintiff alleges that he was strip-searched by defendant Ben Flowers and then held in solitary confinement for three hours.    Id.    Plaintiff later sought audio and video records of the courtroom from DA English, who allegedly withheld some of the recordings.    Id. at p. 5.    He also requested arrest records from the Murray County Sheriff's office, but his requests were either ignored or met with a "no records available" response.    Id. at p. 7.    Plaintiff wrote on multiple occasions to Judge Coppedge, complaining profusely about his allegedly illegal arrest, but Judge Coppedge did not respond. Id. at p. 6.    Plaintiff also alleges that defendant Johnson was colluding with Judge Melton to orchestrate his case's defeat.    Id. Last, without explaining exactly how the following relates to his above claims, he argues that defendant Kara Christy wrongly denied a claim he had before ACCO.    Id. at pp. 5-6.

Civil No. 24-252 (FAB)                                                    4

Plaintiff's complaint asserts claims under 42 U.S.C. § 1983 "against all defendants" for violations of his First, Fourth, and Fourteenth Amendment rights.[2]  Id. at pp. 7-9.  He also asserts judicial misconduct claims against Judges Melton and Coppedge, prosecutorial misconduct against DA English, failure to intervene to prevent constitutional violations against Darin Rogers, Helpingstine and "other law enforcement defendants," conspiracy to violate civil rights in violation of 42 U.S.C. § 1985 against all defendants, Oklahoma constitutional violations against all defendants, false imprisonment against all defendants, intentional infliction of emotional distress against all defendants, violation of the Oklahoma Open Records Act[3] against DA English, Rogers, and the commissioner defendants, and violation of the Oklahoma Governmental Tort Claims Act[4] against all defendants.  Id. at pp. 9-13.

After various procedural developments not relevant here, each defendant moved to dismiss.  The magistrate judge recommends granting each motion to dismiss, dismissing all of plaintiff's claims without prejudice.  He finds that many of plaintiff's claims

---

[2] § 1983 provides that "[e]very person who, under color of [law,] subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.

[3] Okla. Stat. tit. 51, §§ 24A.1 – 24A.40.

[4] Okla. Stat. tit. 51, §§ 151-258.

Civil No. 24-252 (FAB)                                                    5

should be dismissed because the defendants possess immunities – in the case of Judges Melton and Coppedge, absolute judicial immunity, in the case of DA English, prosecutorial immunity, and in the case of defendant Helpingstine, quasi-judicial immunity.  See Docket No. 170 at pp. 8-10 (Judges Melton and Coppedge); pp. 12-17 (DA English); pp. 21-23 (Helpingstine).  He recommends that the section 1983 claims against defendant Johnson be dismissed because she is not a state actor, notwithstanding plaintiff's conclusory allegation that she conspired with state actors.  Id. at pp. 10-12. He finds that all of plaintiff's remaining claims (against Johnson, English, the ACCO, Christy, Hudson, McKinley, Williams, Rogers, and Flowers) lack enough information related to each defendant's conduct to state a claim.  As for plaintiff's motions, the magistrate judge recommends denying his request to amend the complaint because his proposed First Amended Complaint fails to cure the defects of his original complaint.  Id. at pp. 23-25. The magistrate judge recommends finding plaintiff's remaining motions moot.  Id. at p. 26.

Plaintiff makes four objections to the R&R.  First, he argues that the magistrate judge's dismissal of claims that did not adequately attribute specific conduct to specific defendants applied an "overly rigid group pleading standard" that is inconsistent with the lenience typically afforded to *pro se*

Civil No. 24-252 (FAB)                                                          6

plaintiffs. (Docket No. 171 at pp. 1-2.) Second, he argues that the magistrate judge erred in denying his request to amend the complaint. Id. at pp. 2-3. Third, he argues that the magistrate judge improperly found that the claims against Judges Melton and Coppedge, DA English, and defendant Helpingstine were barred by judicial, prosecutorial, and quasi-judicial immunity. Id. at p. 3. Fourth, he argues that the magistrate judge erroneously denied his request for expedited discovery. Id. at p. 4. The defendants filed a joint objection to the R&R with a single argument – that the dismissal of plaintiff's claims should be with prejudice, not without prejudice. See Docket No. 172.

## II.  Legal Standard

A district court may refer a pending motion to a magistrate judge for a report and recommendation. See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(a). Any party adversely affected by the report and recommendation may file written objections within fourteen days of being served with the magistrate judge's report. 28 U.S.C. § 636(b)(1). "A party that files a timely objection is entitled to a de novo determination of those portions of the report or specified proposed findings or recommendations to which a specific objection is made." Lowery Wilkinson Lowery, LLC v. Illinois, No. 25-CV-22-RAW, 2025 U.S. Dist. LEXIS 268063, at *3 (E.D. Okla. Dec. 31, 2025) (citing United

Civil No. 24-252 (FAB)                                                    7

States v. Raddatz, 446 U.S. 667, 673 (1980)).  "The objections must specifically identify those findings or recommendations to which objections are being made" and "[t]he district court need not consider frivolous, conclusive, or general objections."  Id. (citing Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987)).  In conducting its review, the court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(a)(b)(1).

Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a defendant may move to dismiss an action for failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain enough factual matter "to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A court must decide whether the complaint alleges facts which "raise a right to relief above the speculative level."  Id. at 555.  "At the motion-to-dismiss stage, [the Court] must accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff."  Cressman v. Thompson, 719 F.3d 1139, 1141 (10th Cir. 2013) (internal quotation marks and alterations omitted).

Civil No. 24-252 (FAB)                                                    8

A *pro se* litigant's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." Tatten v. City & Cty. of Denver, 730 F. App'x. 620, 624 (10th Cir. 2018) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).  On the other hand, "a pro se litigant's 'conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.'"  West v. United States, No. 25-3082, 2025 U.S. App. LEXIS 24165, at *5 (10th Cir. Dept. 18, 2025) (quoting Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)).

## III. Discussion

### A.    Judicial & Prosecutorial Immunity

The Court will start by addressing plaintiff's objection to the magistrate judge's finding that defendants Melton, Coppedge, English, and Helpingstine are immune from suit.  (Docket No. 171 at p. 3.)  The magistrate judge recommended dismissal of the claims against Melton and Coppedge pursuant to the doctrine of absolute judicial immunity, against English based on prosecutorial immunity, and against Helpingstine based on quasi-judicial immunity.   The Court agrees with the magistrate judge's recommendation dismissing these claims.

First, the claims against Judges Melton and Coppedge are barred by absolute judicial immunity.  "Except where a judge has

acted 'in the clear absence of all jurisdiction,' the doctrine of judicial immunity shields that judge from liability for the judge's official adjudicative acts." Lundahl v. Zimmer, 296 F.3d 936, 939 (10th Cir. 2002) (quoting Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)). The actions that Judge Melton took in holding plaintiff in contempt were clearly within the scope of his official adjudicative acts and jurisdiction. Under Oklahoma law, judges have the authority to "cite for contempt anyone who, in his presence in open court, willfully obstructs judicial proceedings." Okla. Stat. tit. 21, § 565.1. Punishment for contempt may include "imprisonment in the county jail not exceeding six [] months[.]" Okla. Stat. tit. 21, § 566. Because Judge Melton "had the general power to control his courtroom and to hold individuals present there in contempt[,]" his actions were within the scope of jurisdiction, and "[w]hether he used that power appropriately is not the relevant question." Orta v. Repp, No. 3:22-CV-00359-JGC, 2022 U.S. Dist. LEXIS 224633, at *11 (N.D. Ohio Dec. 13, 2022).

As for Judge Coppedge, plaintiff alleges without explanation that he was responsible for supervising Judge Melton. See Docket No. 1 at p. 2 (stating that Judge Coppedge "was responsible for the training and supervision of [Judge] Melton.") If true, such conduct would clearly be within his official adjudicative duties, and if not, it is hard to see how he could be

Civil No. 24-252 (FAB)                                                    10

liable for actions taken by Judge Melton.  In either case, the claims against Judge Coppedge must be dismissed.

Similarly, the magistrate judge properly found that defendant Helpingstine is protected by quasi-judicial immunity, at least with respect to the claims stemming from plaintiff's arrest for contempt.  "Absolute immunity, which has long been available to protect judges from liability for acts performed in their judicial capacity, has been extended to certain others who perform functions closely associated with the judicial process."  Ward v. Fisher, No. 24-5083, 2025 U.S. App. LEXIS 7506, at *7 (10th Cir. Apr. 1, 2025) (internal quotation marks omitted).  "Such immunity is often called quasi-judicial immunity because it is applied to someone other than a judge."  Id. (internal quotation marks omitted).  Quasi-judicial immunity has been extended to cover "officials charged with the duty of executing a facially valid court order[.]"  Moss v. Kopp, 559 F.3d 1155, 1163 (10th Cir. 2009) (citing Turney v. O'Toole, 898 F.2d 1470, 1472 (10th Cir. 1990)).  As discussed above, the arrest warrant for contempt was within Judge Melton's jurisdiction to issue.  Plaintiff fails to present any non-conclusory allegation that would render the arrest warrant facially invalid.  Accordingly, defendant Helpingstine is entitled to quasi-judicial immunity against plaintiff's claims related to the contempt arrest.

Civil No. 24-252 (FAB)                                              11

As for defendant English, plaintiff cites two instances of allegedly wrongful conduct – staying silent when plaintiff was arrested for contempt of court, and alleged withholding of documents related to his arrest and detention.  See Docket No. 1 at p. 10.  Any claim with respect to the first is clearly barred by prosecutorial immunity.  "Absolute immunity [is] recognized for a prosecutor's activities that are 'intimately associated with the judicial phase of the criminal process.'"  Chilcoat v. San Juan Cnty., 41 F.4th 1196, 1208 (10th Cir. 2022) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)).  What DA English did or did not do while sitting in court prosecuting a case is about as close as one gets to conduct "connected with the prosecutor's role in judicial proceedings[.]"  Id. at 1209.

With respect to the Open Records Act claim, DA English's alleged partial response fits less well into his prosecutorial duties.  This claim, however, fails for a different reason.  The Open Records Act requires "public bodies" and "public officials" to keep records open for "inspection, copying, or mechanical reproduction during regular business hours[.]"  Okla. Stat. tit. 51, § 24A.5.  Any duty to produce documents that DA English may have pursuant to the Open Records Act would arise from his status as a public official – he has no duties in his individual capacity.  But plaintiff sued English in his individual capacity

Civil No. 24-252 (FAB)                                                    12

only, not in his official capacity.  Accordingly, plaintiff's Open

Records Act allegations against English also fail to state a

claim.[5]

B.      **Claims Dismissed for Lack of Specificity**

Next, the Court will consider plaintiff's objection to

the magistrate judge's recommended dismissal of his claims based

on lack of specificity as to each defendant's wrongdoing.[6]  (Docket

No. 171 at pp. 1-2.)  As the magistrate judge indicated, many of

plaintiff's claims allege that defendants collectively violated

various laws.  Relying on Robbins v. Oklahoma, 519 F.3d 1242 (10th

Cir. 2008), the magistrate judge rejected many of plaintiff's

claims as failing to provide proper notice to the defendants with

what exactly they are being charged.  See generally id. at 1250

(noting that "it is particularly important in [section 1983 cases

against multiple government actors] that the complaint make clear

exactly *who* is alleged to have done *what* to *whom*, to provide each

individual with fair notice as to the basis of the claims against

him or her, as distinguished from collective allegations against

the state.") (emphasis in original).  Plaintiff argues that the

---

[5] The same argument applies to plaintiff's Open Records Act claims with respect to the Murray County Sheriff's office employees, who are only sued in their individual capacities.

[6] The magistrate judge's lack-of-specificity argument applied to all of plaintiff's claims apart from 1) those dismissed due to judicial, quasi-judicial, or prosecutorial immunity, and 2) the section 1983 claim against defendant Johnson.

Civil No. 24-252 (FAB)                                                    13

magistrate judge's reasoning subjects him to an overly exacting pleading standard, particularly given his status as a *pro se* plaintiff.

The Court does not find fault with most of the magistrate judge's recommended dismissals for lack of specificity. Although a complaint need not be highly detailed, it must be facially plausible – in other words, it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Without basic details as to who did what, most of plaintiff's claims do not allow the court to draw such an inference. Instead, the complaint is rife with conclusory allegations unsupported by any factual averment that might render the claims plausible. See West, 2025 U.S. App. LEXIS 24165, at *5 (conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based).

There are two claims where the Court disagrees with the magistrate judge's recommended dismissal based on lack of specificity. The first claim is plaintiff's Open Records Act claims against the Murray County Sheriff's office defendants - Rogers, Helpingstine, and Flowers - though these are dismissed because, as discussed above, the sheriff's office defendants are

Civil No. 24-252 (FAB)                                              14

only sued in their respective individual capacities.  See supra n. 5.    The second is plaintiff's second 1983 claim against defendant Flowers based on the alleged unconstitutionality of the strip search.   Plaintiff alleges that, after his contempt arrest, he was booked at the Murray County jail.   While being booked, he was subject to a cavity search by defendant Flowers.   After the search, he was placed in "solitary confinement" for three hours before being released.

In Florence v. Bd. of Chosen Freeholders,[7] the Supreme Court upheld the constitutionality of performing a full body cavity search prior to incarceration, but noted potential limits. Particularly relevant here is the Supreme Court's observation that a strip search may be excessive for a detainee held without assignment to the general jail population and without substantial contact with other detainees.  Id. at 338-39; see also id. at 341 (Alito, J., concurring) ("[T]he Court does not hold that it is always reasonable to conduct a full strip search of an arrestee whose detention has not been reviewed by a judicial officer and who could be held in available facilities apart from the general population.")   Following Florence, the Tenth Circuit Court of Appeals found that a body-cavity strip search of a detainee which

---

[7] 566 U.S. 318 (2012).

Civil No. 24-252 (FAB)                                                    15

takes place before deciding whether the detainee will be housed in

the jail's general population violates the Fourth Amendment.  See

Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs, 962 F.3d 1204, 1235-

39 (10th Cir. 2020).

Plaintiff's complaint contains sufficient non-conclusory factual allegations to demonstrate that the strip search potentially violated the Fourth Amendment, and accordingly, states a claim pursuant to section 1983.  Plaintiff claims that he was subject to a cavity search by defendant Flowers prior to being held in solitary confinement at the Murray County jail.  (Docket No. 1 at pp. 4-5.)  Interpreted in the light most favorable to the plaintiff, his allegations render it possible that the search occurred before any determination that he would be placed in the general population of the jail.  Indeed, his allegation of "solitary confinement" may be understood to indicate that he never intermingled with the general population of the jail at all.  If so, the strip search was unreasonably invasive and violated his Fourth Amendment rights.

Flowers's defenses are not sufficient to defeat plaintiff's claim at the motion-to-dismiss stage.  He cannot rely on qualified immunity.  "Qualified immunity insulates officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a

Civil No. 24-252 (FAB)                                           16

reasonable person would have known." Hinkle, 962 F.3d at 1218 (internal quotation marks omitted). Here, Fourth Amendment rights to unreasonable searches are clearly established, and both Florence and Hinkle have been on the books for years. See Pray, 2025 U.S. Dist. LEXIS 261919, at *27-28 ("The facts in Hinkle are sufficient to put any reasonable officer on notice that it is unlawful to strip search every arrestee who enters the booking area before a determination to house the arrestee in general population.") Nor is it a defense that the complaint fails to allege that Flowers knew plaintiff would not be placed in the general population. For the strip search to be constitutionally acceptable, the prison staff must have already determined that the inmate will be placed in the general population. Plaintiff's allegations, interpreted in the light most favorable to him, suggest that this may not have been the case.

Accordingly, the Court adopts in part and rejects in part the R&R's findings dismissing plaintiff's claims for lack of specificity. The Court rejects the lack-of-specificity argument with respect to the Open Records Act claims against Rogers, Helpingstine, and Flowers, though these are dismissed on other grounds. The Court also rejects the lack-of-specificity argument as applied to plaintiff's section 1983 claim against defendant Flowers over the strip search, and will allow this claim to proceed

Civil No. 24-252 (FAB)                                                    17

past the motion-to-dismiss stage.  Every other application of the lack-of-specificity argument is adopted.

### C.    Denying Leave to Amend

Plaintiff also objects to the magistrate judge's refusal to grant him leave to amend his complaint.[8]  (Docket No. 171 at pp. 2-3.)  As the magistrate judge indicated, "court[s] should freely give leave when justice so requires, [] especially [] when the plaintiff is proceeding pro se."  (Docket No. 170 at pp. 24-25) (citing Panicker v. State Dep't of Agric., 498 Fed. Appx. 755, 757 (10th Cir. 2012)).  A court may refuse to grant leave to amend, however, "upon a showing of futility of amendment."  Panicker, 498 Fed. Appx. at 757 (quoting Frank v. U.S. W., Inc., 3 F.3d 1357, 1365 (10th Cir. 1993)) (internal alterations omitted).  "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."  Id. (quoting Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv.'s Serv., Inc., 175 F.3d 848, 859 (10th Cir. 1999)).

---

[8] Plaintiff's motion requests leave to amend the complaint pursuant to Fed. R. Civ. P. 15(a)(2).  Although a plaintiff may amend his or her complaint once as of right, he or she must do so within 21 days of serving the original complaint or 21 days after service of a responsive pleading or motion under Rule 12(b), (e), or (f), whichever is earlier.  Fed. R. Civ. P. 15(a)(1).  Plaintiff's request to amend the complaint was submitted in October 2025, over a year after the first motion to dismiss was filed.  See Docket No. 46; Docket No. 143.  As a result, plaintiff must obtain leave of the court before filing his amended complaint.  See United States ex rel. Carter v. Halliburton Co., 144 F. Supp. 3d 869, 877-79 (E.D. Va. 2015) (finding that "the time period for amending the complaint as a matter of course under [Rule] 15(a)(1) beg[ins] when Defendants filed their *first* motion to dismiss[,]" and subsequent motions to dismiss do not toll the 21-day period).

Civil No. 24-252 (FAB)                                                    18

The Court agrees with the magistrate judge's finding that plaintiff's proposed First Amended Complaint does not cure any of the deficiencies in his original complaint.  As was the case with his original complaint, most of the claims in plaintiff's amended complaint are built on conclusory allegations without supporting factual averments.  Indeed, his proposed amended complaint generally contains less detail than the original. Swapping the proposed amended complaint for the original complaint would actively hurt his claim against defendant Flowers, the only one plausible enough to proceed past the motion-to-dismiss stage, and would not save any of his other claims from dismissal. Accordingly, the Court **DENIES** plaintiff's requested leave to amend.

D.    **Denying Discovery Request**

Plaintiff's final objection to the R&R is to the magistrate judge's recommendation to deny his request for early discovery.  (Docket No. 171 at p. 4.)  The magistrate judge found that plaintiff's request for early discovery was moot because his complaints failed to state a single claim upon which relief may be granted.  Although the request for discovery is no longer moot due to the survival of the lack of specificity claim against Flowers, the Court rejects the request nonetheless.

Civil No. 24-252 (FAB)                                                19

"A party seeking expedited discovery in advance of a Rule 26(f) conference has the burden of showing good cause for the requested departure from usual discovery procedures." Sirio v. Stancil, No. 1:25-cv-02790-RMR-SBP, 2026 U.S. Dist. LEXIS 13159, at *2 (D. Colo. Jan. 23, 2026). In plaintiff's case, however, each of his cited reasons for good cause relate to claims that the Court will dismiss. See Docket No. 151 at p. 1 (citing fraudulent lien activity, contempt arrest without lawful basis, and a joint conspiracy between private and public actors as factors supporting good cause). He provides no reason why expedited discovery is justified for his section 1983 claim against defendant Flowers, the only remaining claim. Accordingly, plaintiff's request for expedited discovery is **DENIED.**

### E.    Plaintiff's Motion for Sanctions

Although not specifically addressed by the parties' objections, the Court must address plaintiff's motion for sanctions. In that motion, plaintiff argues that defendants' motions to dismiss are legally frivolous in violation of Federal Rule of Civil Procedure 11. The magistrate judge found plaintiff's motion for sanctions moot because each of the defendants' motions to dismiss should be granted. Because the Court declines to grant defendant Flowers's motion to dismiss, characterizing plaintiff's

Civil No. 24-252 (FAB)                                           20

motion for sanctions as moot is no longer appropriate.  That said, his request fares no better on the merits.

Federal Rule of Civil Procedure 11 requires attorneys to certify that their pleadings are "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation[.]"  A pleading's "claims, defenses, and other legal contentions [must be] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]"  Id.  Before awarding Rule 11 sanctions, the Court "must find that a pleading violates Rule 11."  Collins v. Daniels, 916 F.3d 1302, 1319 (10th Cir. 2019).  "Rule 11 imposes an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing."  Id. at 1320.  "Because our adversary system expects lawyers to zealously represent their clients, the Rule 11 standard is a tough one to satisfy; an attorney can be rather aggressive and still be reasonable."  Id. (internal alterations omitted).

Weighed against that standard, plaintiff's argument for Rule 11 sanctions is meritless.  Most of defendants' motions to dismiss will be granted – the very opposite of legal frivolity. As for defendant Flowers' motion to dismiss, it too was nowhere near frivolous.  Just because the Court did not agree with him

Civil No. 24-252 (FAB)                                         21

does not mean he failed to present legally cognizable arguments. Accordingly, the Court **DENIES** plaintiff's motion for sanctions.

### F.    Defendants' Objection to Dismissal Without Prejudice

Defendants object to the magistrate judge's recommendation to dismiss plaintiff's claims without prejudice. (Docket No. 172.)  Defendants argue that the claims should instead be dismissed with prejudice.

Courts in the Tenth Circuit generally view dismissal based on judicial and prosecutorial immunity as an adjudication on the merits, and accordingly dismiss with prejudice.  See, e.g., Roman Serpik v. Marsee, No. CIV-23-00148-JD, 2023 U.S. Dist. LEXIS 121342, at *8-9 (W.D. Okla. Jul. 14, 2023) (dismissing claims with prejudice based on judicial and prosecutorial immunity); Eliason v. United States DOJ, No. 2:24-cv-00064-HCN-JCB, 2025 U.S. Dist. LEXIS 149464, at *16 (D. Utah Feb. 13, 2025) (dismissal with prejudice based on absolute judicial immunity).  Accordingly, plaintiff's claims against defendants Melton, Coppedge, English, and Helpingstine will be dismissed with prejudice.  Dismissing plaintiff's section 1983 claim against defendant Johnson because she is not a state actor, a conclusion to which plaintiff did not object, is also properly with prejudice.  See Lowrey v. Collela, 1:24-cv-00225-KWR-LF, 2025 U.S. Dist. LEXIS 90212, at *1-2, 18-19 (D.N.M. May 9, 2025) (dismissing section 1983 claims against legal

Civil No. 24-252 (FAB)                                                          22

aid attorneys with prejudice after the attorneys were found not to be state actors).  Plaintiff's Open Records Act claims against various defendants in their individual capacities should also be dismissed with prejudice.  These claims are dismissed on the merits because the defendants lack individual duties under the Open Records Act.  The remaining claims are dismissed based on lack of specificity and will be dismissed without prejudice.  Plaintiff's lack of specificity in his complaint prevents the Court from engaging with the merits of his claims.[9]  Cf. Montoya v. Colony, No. 25-1217, 2025 U.S. App. LEXIS 21143, at *3-4 (10th Cir. Aug. 19, 2025) (affirming dismissal without prejudice of a complaint whose "vagaries, its lack of specific claims for relief or recitation of facts makes it impossible to give fair notice of the basis of any claim without constructing arguments on her behalf.")

## IV.  Conclusion

For the reasons set forth above, the Court **ADOPTS IN PART** and **DENIES IN PART** the R&R.  (Docket No. 170).  Defendants' motions to dismiss with respect to each defendant except Flowers are **GRANTED.** (Docket Nos. 134, 135, 136, 138, 139, 141, 142).  Defendant Flowers's motion to dismiss is **DENIED IN PART.**  (Docket No. 137.) All of plaintiff's claims against defendant Flowers are dismissed

---

[9] Practically speaking, this also limits a future court's ability to meaningfully apply *res judicata* against future claims.

Civil No. 24-252 (FAB)                                                      23
_____

except for his section 1983 claim related to the strip search, which is the only surviving claim in this case.

Plaintiff's claims against defendants Melton, Coppedge, English, and Helpingstine are dismissed **WITH PREJUDICE**. Plaintiff's section 1983 claim against defendant Johnson is dismissed **WITH PREJUDICE**. Plaintiff's Open Records Act claims are dismissed **WITH PREJUDICE**. The rest of the dismissed claims are dismissed **WITHOUT PREJUDICE**.

Plaintiff's motion for leave to amend the complaint is **DENIED**. (Docket No. 143.) Plaintiff's motion for judicial notice of invalid lien is **MOOT**. (Docket No. 145.) Plaintiff's motion for expedited discovery is **DENIED**. (Docket No. 151.) Plaintiff's motion for sanctions is **DENIED**. (Docket No. 152.)

Partial judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, May 19, 2026.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE